**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---------------------------------------------------------------x

HUIRU WANG
a/k/a Erica Wang
Plaintiff,

v.

CT WANHUA NOODLE CORP
d/b/a Dun Huang Edison
d/b/a Dun Huang Newport,
NEW TASTE OF NORTH CHINA INC
d/b/a Taste of North China Jersey City
d/b/a Paper Lantern Montclair
XINLI NIU
a/k/a Linda Niu,
XINMIN NIU,
ALEX NIU,
HAILIN WANG, and
VICTOR "DOE"
a/k/a Tyler "Doe"
Defendants.

---------------------------------------------------------------x

**Case No. 26-cv-014335**

**COLLECTIVE AND CLASS ACTI ON COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff HUIRU WANG (hereinafter referred to as "Plaintiff"), on behalf of herself and others similarly situated, by and through her attorneys, Troy Law, PLLC, hereby brings this complaint against Defendants CT WANHUA NOODLE CORP d/b/a Dun Huang Edison d/b/a Dun Huang Newport, NEW TASTE OF NORTH CHINA INC d/b/a Taste of North China Jersey City d/b/a Paper Lantern Montclair (together with "CT WANHUA NOODLE CORP", "Entity Defendants," collectively), XINLI NIU a/k/a Linda Niu, XINMIN NIU, ALEX NIU, HAILIN WANG and VICTOR "DOE" a/k/a Tyler "Doe" (hereinafter collectively referred to as "Defendants") and alleges as follows:

## INTRODUCTION

1. This action is brought by the Plaintiff HUIRU WANG, on behalf of herself, against the Defendants for alleged violations of the Fair Labor Standards Act, ("FLSA"), 29 U.S.C. §§

201 *et seq.*, and New Jersey Wage and Hour Law, N.J.S.A. § 34:11-56 *et seq.* ("NJWHL"), arising from Defendants' various willful and unlawful employment policies, patterns and practices.

2. Upon information and belief, Defendants have willfully and intentionally committed widespread violations of the FLSA and NJWHL by engaging in pattern and practice of failing to pay their employees, including Plaintiff, minimum wage for each hour worked and overtime compensation for all hours worked over forty (40) each workweek.

3. Upon personal knowledge of the Plaintiff, Defendants have failed to keep accurate records of actual hours worked. Regardless of when Plaintiff actually arrived at and started to work, the manager recorded each workday as starting at 11:00 AM. And regardless of when Plaintiff finished working and left work, the manager recorded each workday as ending at either 9:20 PM, 9:25 PM, or 9:30 PM.

4. Upon personal knowledge of the Plaintiff, and upon information, records kept by Defendants inaccurately reflect wages owed to the Plaintiff. Paystubs that show wages paid to Plaintiff on a weekly basis in cash and check demonstrate significantly less amounts than the actual wages earned by the Plaintiff on those weeks, per the pay records listing the hours worked, break hours, and tips earned.

5. Upon personal knowledge of the Plaintiff, and upon information, at the time of hire, Plaintiff was not notified of "rent" deductions made to paychecks, and said deductions are not explicitly shown on paystubs either as deductions or in the comments of paystubs. Defendant claims deductions are for payment to dormitory purposes and are in accordance with the law.

6. Upon personal knowledge of the Plaintiff and belief, Plaintiff has been assigned to work in roles with non-tipped work for over 20% of the time, with compensation remaining the same as base wages of a tipped worker.
7. Plaintiff alleges pursuant to the FLSA, that she is entitled to recover from the Defendants: (1) unpaid overtime compensation, (2) misappropriated tips (3) liquidated damages, (4) prejudgment and post-judgement interest; and or (5) attorney's fees and cost.
8. Plaintiff further alleges pursuant NJWHL that she is entitled to recover from the Defendants: (1) unpaid overtime compensation, (2) liquidated damages, (3) pre-judgment and post-judgment interest, and (4) attorney's fees and costs.
9. Plaintiff further allges pursuant to the New Jersey Revised Statutes ("N.J.S.A") and the New Jersey Administrative Code ("N.J.A.C.") that she is entitled to recover from the Defendants: (1) Missapropriation of Tips, (2) pre-judgment and post-judgment interest, and (3) attorney's fees and costs.

## JURISDICTION AND VENUE

10. This Court has original federal question jurisdiction over this controversy under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 and has supplemental jurisdiction over the New Jersey State Law claims pursuant to 28 U.S.C. § 1367(a).
11. Venue is proper in the New Jersey pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## PLAINTIFF

12. Plaintiff HUIRU WANG was employed by Defendants from on or about July 10, 2022, through on or about February 14, 2026, to work as a server and front desk worker at Corporate Defendant CT WANHUA NOODLE CORP's restaurant, Dunhuang Edison,

located at 1717 NJ-27, Edison, NJ 08817.

13. In addition, on one occasion during 2023, Plaintiff HUIRU WANG a/k/a Erica Wang worked at NEW TASTE OF NORTH CHINA INC d/b/a Taste of North China Jersey City d/b/a Paper Lantern Montclair's restaurant, Taste of North China at 75 Montgomery Street, Store 1, Jersey City, NJ 07302.

**DEFENDANTS**

***Corporate Defendants***

14. Defendant CT WANHUA NOODLE CORP d/b/a Dun Huang Edison d/b/a Dun Huang Newport, is a domestic business corporation organized under the laws of the State of New Jersey with a principal address and doing business as Dun Huang Edison 1717 NJ-27, Edison, NJ 08817.

15. CT WANHUA NOODLE CORP d/b/a Dun Huang Edison d/b/a Dun Huang Newport additionally operated a restaurant doing business as Dun Huang Newport at 180 River Drive, Jersey City, NJ 07310.

16. Defendant CT WANHUA NOODLE CORP is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000) per year.

17. Defendant CT WANHUA NOODLE CORP purchased and handled goods moved in interstate commerce.

18. Defendant NEW TASTE OF NORTH CHINA INC d/b/a Taste of North China Jersey City d/b/a Paper Lantern Montclair is a domestic business corporation organized under the laws of the State of New Jersey with a principal address and is doing business as Taste of North China Jersey City at 75 Montgomery Street, Store 1, Jersey City, NJ 07302.

19. Defendant NEW TASTE OF NORTH CHINA INC d/b/a Taste of North China Jersey City d/b/a Paper Lantern Montclair additionally operated a restaurant doing business Paper

Lantern Montclair at 379 Bloomfield Ave, Montclair, NJ 07042.

20. Defendant NEW TASTE OF NORTH CHINA INC d/b/a Taste of North China Jersey City d/b/a Paper Lantern Montclair is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000) per year.

21. Defendant NEW TASTE OF NORTH CHINA INC d/b/a Taste of North China Jersey City d/b/a Paper Lantern Montclair purchased and handled goods moved in interstate commerce.

22. Defendant NEW TASTE OF NORTH CHINA INC d/b/a Taste of North China Jersey City d/b/a Paper Lantern Montclair had employees from CT WANHUA NOODLE CORP d/b/a Dun Huang Edison and Dun Huang Newport cover shifts at Paper Lantern Montclair at 379 Bloomfield Ave, Montclair, NJ 07042, on demand based on restaurant need.

23. Defendant NEW TASTE OF NORTH CHINA INC d/b/a Paper Lantern Montclair had an employee named “Zhang Hongfeng” transferred in from CT WANHUA NOODLE CORP d/b/a Dun Huang Edison at 1717 NJ-27, Edison, NJ 08817.

***Individual Defendants***

24. XINLI NIU a/k/a Linda Niu known as “auntie” or “Linda” to Plaintiff, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at CT WANHUA NOODLE CORP d/b/a Dunhuang Edison and d/b/a Dun Huang Newport and NEW TASTE OF NORTH CHINA INC d/b/a Taste of North China Jersey City and d/b/a Paper Lantern Montclair.

25. XINLI NIU a/k/a Linda Niu determined the cash wages allocated, which are $1000 per month, or $500 per half month, and the rest was a “cash bonus”. The employees who did not pay taxes were all paid in cash.

26. XINLI NIU a/k/a Linda Niu calculated the employee wages.

27. XINLI NIU a/k/a Linda Niu signed off on the employees wages.

28. Furthermore, XINLI NIU a/k/a Linda Niu had power to transfer employees across the restaurant locations.

29. To illustrate, XINLI NIU a/k/a Linda Niu had an employee named Hongfeng Zhang transferred in to NEW TASTE OF NORTH CHINA INC d/b/a Paper Lantern Montclair from CT WANHUA NOODLE CORP d/b/a Dun Huang Edison.

30. XINLI NIU a/k/a Linda Niu delegated the power to hire to ALEX NIU, the General Manager.

31. Together with HAILIN WANG paid the employees each pay day.

32. During Plaintiff's employment, XINLI NIU a/k/a Linda Niu made the executive decision to change all of the employees' work schedule at Dun Huang Edison based on a report by the Head Chef.

33. Based on XINLI NIU a/k/a Linda Niu's directives, ALEX NIU was directed to give priority scheduling to XINLI NIU a/k/a Linda Niu's relatives' child. ALEX NIU was told to take "good care of him", since this child wanted to buy a car and was given this job to save money to do so.

34. Further, the normal practice at Dunhuang Edison is to allocate 80% of the tip to a new employe and after two weeks it would get increased to 100% if they seemed experienced. However, XINLI NIU a/k/a Linda Niu's relatives' child received 100% within a few days even though he had never worked in a restaurant before and could not speak English well.

35. The manager VICTOR "DOE" a/k/a Tyler "Doe" objected but XINLI NIU a/k/a Linda Niu directed Tyler to cover for him in the parts that he was lacking. The manager informed the employees of this matter, and none of them were happy with the situation.

36. XINLI NIU a/k/a Linda Niu acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d), and regulations promulgated thereunder, 29 C.F.R. § 791.2, NJWHL, N.J.S.A. § 34:11-56a1(g) and the regulations thereunder, and is jointly and severally liable with CT WANHUA NOODLE CORP d/b/a Dunhuang Edison and d/b/a Dun Huang Newport and NEW TASTE OF NORTH CHINA INC d/b/a Taste of North China Jersey City and d/b/a Paper Lantern Montclair.

37. . Upon information and belief, XINMIN NIU known as “CEO” or “Boss” to Plaintiff, (1) worked together with XINLI NIU as a “team” and group to make employment decisions and (2) determined the rate and method of payment, at CT WANHUA NOODLE CORP d/b/a Dunhuang Edison and d/b/a Dun Huang Newport and NEW TASTE OF NORTH CHINA INC d/b/a Taste of North China Jersey City and d/b/a Paper Lantern Montclair.

38. XINMIN NIU acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NJWHL, N.J.S.A. § 34:11-56a1(g), and the regulations thereunder, and is jointly and severally liable with CT WANHUA NOODLE CORP d/b/a Dunhuang Edison and d/b/a Dun Huang Newport and NEW TASTE OF NORTH CHINA INC d/b/a Taste of North China Jersey City and d/b/a Paper Lantern Montclair. . Upon information and belief, ALEX NIU known as “General Manager” to Plaintiff, (1) Hires and Interviews employees and (2) determined the rate of payment, wage allocation and work schedule, at CT WANHUA NOODLE CORP d/b/a Dunhuang Edison and d/b/a Dun Huang Newport and NEW TASTE OF NORTH CHINA INC d/b/a Taste of North China Jersey City and d/b/a Paper Lantern Montclair.

39. ALEX NIU is a relative to XINLI NIU.

40. ALEX NIU hired Plaintiff.

41. ALEX NIU interviewed Plaintiff.

42. ALEX NIU actually determined Plaintiff's pay rate.

43. At the time when he set Plaintiff's pay rate, he informed her that it was consistent with the other waitstaff's pay rate, which is in turn set by XINLI NIU and XINMIN NIU.

44. ALEX NIU actually set Plaintiff's work schedule on a regular basis.

45. At the time when he set Plaintiff's pay rate, he informed her that it was consistent with the other staff's schedule, which is in turn set by XINLI NIU and XINMIN NIU.

46. ALEX NIU acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NJWHL, N.J.S.A. § 34:11-56a1(g), and the regulations thereunder, and is jointly and severally liable with CT WANHUA NOODLE CORP d/b/a Dunhuang Edison and d/b/a Dun Huang Newport and NEW TASTE OF NORTH CHINA INC d/b/a Taste of North China Jersey City and d/b/a Paper Lantern Montclair.

47. HAILIN WANG worked together with XINLI NIU a/k/a Linda Niu to pay employees at CT WANHUA NOODLE CORP d/b/a Dunhuang Edison d/b/a Dun Huang Newport.

48. HAILING WANG purchased supplies on behalf of CT WANHUA NOODLE CORP d/b/a Dunhuang Edison d/b/a Dun Huang Newport.

49. HAILING WANG purchased and maintained the employee dormitory at CT WANHUA NOODLE CORP d/b/a Dunhuang Edison d/b/a Dun Huang Newport.

50. Further, among Dun Huang Edison and Dun Huang Newport a Spanish-speaking employee who by Plaintiff's understanding was from "Mexico" was transferred for work between the two locations by HAILIN WANG.

51. HAILIN WANG acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NJWHL, N.J.S.A. § 34:11-56a1(g), and the regulations thereunder, and is jointly and severally liable with CT WANHUA NOODLE CORP d/b/a Dunhuang Edison d/b/a Dunhuang Newport.
52. VICTOR "DOE" a/k/a Tyler "Doe" started to work for Dun Huang Edison at 1717 NJ-27, Edison, NJ 08817 from on or about 2020 to 2021 to present as the Manager.
53. VICTOR "DOE" a/k/a Tyler "Doe" handles the "Pay Out Record" which determines the hours recorded, credit and cash tips made, and clock in and clock out times.
54. VICTOR "DOE" a/k/a Tyler "Doe" arrives at between 11:30 to 11:40 AM each morning, later than Plaintiff HUIRU WANG, and records Plaintiff's clock in time at 11:00 AM despite Plaintiff's earlier arrival at 10:30 AM.
55. VICTOR "DOE" a/k/a Tyler "Doe" acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NJWHL, N.J.S.A. § 34:11-56a1(g), and the regulations thereunder, and is jointly and severally liable with CT WANHUA NOODLE CORP d/b/a Dunhuang Edison and d/b/a Dun Huang Newport .

## STATEMENT OF FACTS

***Entity Defendants Constitute a Single Integrate Enterprise***

56. Entity Defendants constitute an enterprise as the term defined by 29 U.S.C. § 203(r), known as the "Dunhuang, Taste of North China and Paper Lantern" and in that capacity are a single employer with respect to XINLI NIU a/k/a Linda Niu, XINMIN NIU, ALEX NIU and HAILIN WANG.
57. The Dunhuang, Taste of North China and Paper Lantern are a group of restaurants centrally managed and controlled by individual Defendants XINLI NIU a/k/a Linda Niu, XINMIN

NIU, ALEX NIU and HAILIN WANG.

58. Upon information and belief, CT WANHUA CORP and NEW TASTE OF NORTH CHINA INC in particular are the management companies centrally directing the unified business of Dunhuang, Taste of North China and Paper Lantern

59. The entities operating Dun Huang, Taste of North China and Paper Lantern share common owners in the persons of the Individual Defendants, who are the shareholders of the corporate Entity Defendants and members of the LLC Entity Defendants.

60. The entities operating Dun Huang, Taste of North China and Paper Lantern share common operators, persons with financial control, and managers in the persons of the Individual Defendants, who are officers of the corporate Entity Defendants, managing members of the Corporate Entity Defendants, for all of the Entity Defendants, and who exercise control over employees as set forth above.

61. Entity Defendants jointly maintain a single unified system where they transfer and share employees across locations based on restaurant need.

62. Plaintiff WANG has on one occasion during the year 2023, covered a shift at NEW TASTE OF NORTH CHINA INC d/b/a Taste of North China Jersey City, per the directions of the "head chef".

63. After that, Plaintiff WANG was directed by Defendant ALEX NIU on multiple occasions during her work period to cover shifts at NEW TASTE OF NORTH CHINA INC d/b/a Taste of North China Jersey City, but she declined.

64. Plaintiff WANG is knowledgeable of coworkers who were transferred among the locations.

65. As an example, Plaintiff WANG is personally familiar with a Spanish-speaking individual who Plaintiff believed to hail from Mexico, who was transferred between Dun Huang

Edison and Dun Huang Newport.

66. As further illustration, Plaintiff WANG observed that Defendant XINLI NIU a/k/a Linda Niu had an employee named HONGFENG ZHANG transferred into NEW TASTE OF NORTH CHINA INC d/b/a Paper Lantern Montclair from CT WANHUA NOODLE CORP d/b/a Dun Huang Edison.

67. Upon further information and belief, the individual Defendants operated a central kitchen in Flushing, New York, where they made frozen dumplings which was further distributed among Dun Huang Edison, Dun Huang Newport, Taste of North China and Paper Lantern.

68. At all times relevant herein, Entity Defendants are, and continues to be, an "enterprise engaged in commerce" within the meaning of FLSA.

69. Further, the Corporate Defendants shared supplies including spoons and plates used by the restaurant

70. At all relevant times, the work performed by Plaintiff WANG was directly essential to the business operated by the Defendants.

**<u>Corporate Defendants CT WANHUA NOODLE CORP and NEW TASTE OF NORTH CHINA INC as Joint Employers</u>**

71. Owner/ Operator Defendants XINLI NIU a/k/a Linda Niu, XINMIN NIU, ALEX NIU, and HAILIN WANG had the power to hire/fire, transfer employees, pay the employees, set work schedules and pay schedules for Corporate Defendants CT WANHUA NOODLE CORP d/b/a Dun Huang Edison d/b/a Dun Huang Newport and TASTE OF NORTH CHINA INC d/b/a Taste North China Jersey City d/b/a Paper Lantern Montclair.

72. The individual Defendants as joint employers transferred employees between Dun Huang Edison, Dun Huang Newport, Taste of North China Jersey City and Paper Lantern Montclair.

**Wage-and-Hour Claims**

73. Defendants committed the following alleged acts knowingly, intentionally and willfully against the Plaintiff, the Collective, and the Class.

74. At all relevant times, Defendants knowingly and willfully failed to pay Plaintiff her lawful overtime compensation of one and one-half times (1.5x) her regular rate of pay for all hours worked over forty (40) in a given workweek.

75. While employed by Defendants, Plaintiff was not exempt under Federal and State laws requiring employers to pay employees overtime.

76. Defendants failed to keep full and accurate records of Plaintiff's hours and wages.

77. Upon information and belief, Defendants failed to keep full and accurate records in order to mitigate liability for their wage violations. Defendants never furnished any notice of their use of tip credit.

78. Upon information and belief, Defendants failed to keep full and accurate records of deductions from pay records. Defendants' pay records do not accurately reflect that wages owed to Plaintiff are paid.

79. Defendants knew that the nonpayment of overtime pay would financially injure Plaintiff and similarly situated employees and violate state and federal laws.

***HUIRU WANG a/k/a Erica Wang***

80. From on or about July 10, 2022, to February 14, 2026, Plaintiff HUIRU WANG a/k/a Erica Wang was hired as a server and front desk worker for the Corporate Defendant's Restaurant Dunhuang Lanzhou Beef Noodle, located at 1717 NJ-27, Edison, NJ 08817.

81. During employment at Corporate Defendant's restaurant, HUIRU WANG a/k/a Erica Wang stayed in a dormitory located at 115 Columbia Street Highland Park, NJ 08904, owned and managed by individual defendants HAIILIN WANG and XINLI NIU a/k/a

Linda Niu.

82. From on or about July 10, 2022, to February 14, 2026, Plaintiff HUIRU WANG a/k/a Erica Wang worked an inconsistent schedule in which:

   a. Plaintiff worked five (5), six (6), or seven (7) days a week, from 10:30 to typically around 9:30 for around eleven (11) hours a day.

   b. Plaintiff comes into work on days off for two (2 hours) completing non-tip compensated work like packing food around once or twice a month, at a rate of fifteen dollars ($15) per hour.

   c. Plaintiff on Thursdays, around ¼ of the time, stays until 9:50 pm or 10:00 pm. Plaintiff on Fridays, around half the time, stays until 9:50 pm or 10:00 pm.

83. At all relevant times, Plaintiff HUIRU WANG arrived at her workplace and began working at about 10:30 AM, but was only clocked in by VICTOR “DOE” a/k/a Tyler “Doe” at 11:00 AM.

84. At all relevant times, Plaintiff HUIRU WANG takes a 1-hour break on days she works a full scheduled day.

85. At all relevant times, Plaintiff HUIRU WANG was not paid overtime pay for overtime work.

86. At all relevant times, Plaintiff HUIRU WANG was paid her regular hourly wage of fifteen dollars per hour ($15.00/hour) for days she worked as a packer, which were recorded separately from her other work hours, so that Defendants could record her working fewer than forty (40) hours per week in any one job and avoid paying her time-and-a-half for her overtime hours.

87. Throughout her employment, Plaintiff HUIRU WANG alleges that she has been assigned

to work in non-tipped roles for over 20% of her scheduled workdays. From 2022 to 2024, Plaintiff alleges she was primarily responsible for front desk as well as service, and occasional takeaway meals. From 2025 to 2026, Plaintiff alleges she is assigned to front desk and service work two-thirds (2/3) of the time and one-third (1/3) on takeout and dining.

88. During the first month of employment, Plaintiff HUIRU WANG saw a deduction of $10 from her pay per month. Plaintiff alleges that around 2024, Defendant XINLI NIU told Plaintiff that according to law, employees had to pay thirty dollars ($30) in rent, sign a lease, and deduct thirty dollars ($30) and thirty-seven dollars ($37) for electricity and Wi-Fi, for the dormitory that Plaintiff resides in. Later in 2025, Plaintiff alleges that Defendant claims the residents of the dormitory use too much water but has no bill to back up this claim.

89. Throughout her employment, Plaintiff HUIRU WANG was not compensated at least at one-and-one-half full minimum wage for all hours worked above forty (40) in each workweek.

90. Further, at all relevant times, Plaintiff HUIRU WANG had her tips misappropriated by the Defendants due to the Defendants unlawful practice of including the employees who did not perform tipped work in the tip pool.

91. On or about February 15, 2026, Plaintiff HUIRU WANG's dormitory experienced a break-in due to one of the residents neglecting to lock doors at the dorm, resulting in Plaintiff's financial loss of about a month's wages or "a couple thousand". No police report was filed. As a result of this break-in, Plaintiff decides to quit working at Corporate Defendant's restaurant, terminating her employment.

92. Further, the front hall area was made of tiles. XINLI NIU a/k/a Linda Niu directed

VICTOR "DOE" a/k/a Tyler "Doe" to have the waitstaff clean to clean the front hall area themselves (despite first looking for a cleaner) and mentioned that the "cleaning fee" would be covered from their wages. Accordingly, the waitstaff were required to perform a "deep clean" of the restaurant after work.

## COLLECTIVE ACTION ALLEGATIONS

93. Plaintiff brings this action individually and as class representative individually and on behalf of all other and former non-exempt employees who have been or were employed by the Defendants for up to the last three (3) years, through entry of judgment in this case (the "Collective Action Period") and whom were not compensated at their promised hourly rate for all hours worked and at one and one half times their promised work for all hours worked in excess of forty (40) hours per week (the "Collective Action Members").

## CLASS ACTION ALLEGATIONS

94. Plaintiff brings her NJWHL claims pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") Rule 23, on behalf of all non-exempt personnel employed by Defendants on or after the date that is two years before the filing of the Complaint in this case as defined herein (the "Class Period").

95. All said persons, including Plaintiff, are referred to herein as the "Class."

96. The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class Member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said Fed. R. Civ. P. 23.

***Numerosity***

97. The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) members of the class.

***Commonality***

98. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

   a. Whether Defendant employed Plaintiff and the Class within the meaning of the NJWHL;

   b. Whether Plaintiff and Class members are entitled to and paid overtime under the NJWHL; and

   c. At what common rate, or rates subject to common method of calculation were and are Defendants required to pay the Class members for their work.

***Typicality***

99. Plaintiff's claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage or overtime compensation. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and

procedures.

***Adequacy***

100. Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in representing Plaintiffs in both class action and wage-and-hour employment litigation cases.

***Superiority***

101. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage-and-hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of efforts and expenses that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the

disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

102. Upon information and belief, Defendants and other employers throughout the state violate the NJWHL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

## STATEMENT OF CLAIMS

### COUNT I.
### [Violations of the Fair Labor Standards Act—Failure to Pay Overtime Brought on behalf of the Plaintiff and the FLSA Collective]

103. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

104. The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which she is employed, or one and one-half times the minimum wage, whichever is greater. 29 U.S.C. § 207(a).

105. The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC § 216(b).

106. Defendants' failure to pay Plaintiff and the FLSA Collective their overtime pay violated the FLSA.

107. At all relevant times, Defendants had, and continue to have, a policy of practice of refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiff and Collective Action Members for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

108. The FLSA and supporting regulations required employers to notify employees of employment law requires employers to notify employment law requirements. 29 C.F.R. § 516.4.

109. Defendants willfully failed to notify Plaintiff and FLSA Collective of the requirements of the employment laws in order to facilitate their exploitation of Plaintiff' and FLSA Collective's labor.

110. Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and Collective Class Members the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they knew or should have known such was due and that failing to do so would financially injure Plaintiff and Collective Action members.

**COUNT II.**
**[Violation of New Jersey Wage and Hour Law—Failure to Pay Overtime Brought on behalf of Plaintiff and Rule 23 Class]**

111. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

112. An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages, and interest.

113. At all relevant times, Defendants had a policy and practice of refusing to pay the overtime compensation to Plaintiff at one and one-half times the hourly rate the Plaintiff and the class are entitled to.

114. By failing to pay Plaintiff and the class, the Plaintiff and Class Members are entitled to recover from Defendants his full unpaid overtime pay, damages for unreasonably delayed payment of wages, reasonable attorneys' fees and costs and disbursement of the action pursuant to NJWHL §§ 34:11-56a *et seq*

**COUNT III.**
**[Violation of the Fair Labor Standards Act U.S.C. § 203(m) — Misappropriation of Tips Brought on Behalf of Plaintiff and Rule 23 Class]**

115. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

116. 29 U.S.C. § 203(m)(2)(B) provides that "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit.

117. At all relevant times, Plaintiff HUIRU WANG had her tips misappropriated by the Defendants due to the Defendants unlawful practice of including the employees who did not perform tipped work in the tip pool.

118. The practice at Dunhuang Edison is to allocate 80% of the tip to a new employe and after two weeks it would get increased to 100% if they seemed experienced. However, XINLI NIU a/k/a Linda Niu's relatives' child received 100% within a few days even though he had never worked in a restaurant before and could not speak English well.

119. 29 U.S.C. § 216(b) provides that "[a]ny employer who violates section 203(m)(2)(B) of this title shall be liable to the employee or employees affected in the amount of the sum of any tip credit taken by the employer and all such tips unlawfully kept by the employer,

and in an additional amount as liquidated damages," and further provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action."

120. Defendant knowingly, willfully, and maliciously disregarded the provisions of the FLSA by misappropriating Plaintiff's tips.

**COUNT IV.**
**[Violation of N.J.S.A. 34:11-4.4 and N.J.A.C. 12:56-8.4 — Misappropriation of Tips Brought on Behalf of Plaintiff and Rule 23 Class]**

121. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

122. N.J.A.C. 12:56-8.4 provides in relevant part that tips received by an employee are the property of the employee and that "[i]t is unlawful for an employer to take or receive any part of the tips or gratuities given to an employee by a customer."

123. N.J.S.A. 34:11-4.4 provides in relevant part that "[n]o employer may withhold or divert any portion of an employee's wages," except for strictly enumerated statutory deductions.

124. Defendants knowingly, willfully, and maliciously disregarded the provisions of N.J.S.A. 34:11-4.4 and N.J.A.C. 12:56-8.4 by misappropriating Plaintiff's tips.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself, and on the behalf of the FLSA Collective Plaintiffs and Rule 23 Class, respectfully requests that this Court enter a judgment providing the following relief:

a) Authorizing Plaintiff at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-

supervised notice, been employed by Defendants as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of her right to join this lawsuit if they believe they were denied premium overtime wages;

b) A declaratory judgment that the practices complained of herein are unlawful under FLSA, and NJWHL;

c) An injunction against Corporate Defendants, their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

d) An award of unpaid overtime wages and misappropriation of tips due under FLSA and NJWHL due Plaintiff and the Collective Action members plus compensatory and liquidated damages;

e) An award of liquidated damages as a result of Defendants' knowing and willful failure to pay overtime compensation;

f) An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. § 216(b) and NJWHL;

g) The cost and disbursements of this action;

h) An award of prejudgment and post-judgment fees;

i) Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) and 38(c) of the Federal Rules of Civil Procedures, Plaintiff demands a trial by jury on all questions of facts.

Dated: Flushing, NY
November 4, 2026

TROY LAW, PLLC
*Attorneys for the Plaintiff*

*/s/ Aaron B. Schweitzer*
Aaron B. Schweitzer
41-25 Kissena Boulevard
Suite 110
Flushing, NY 11355
Tel: (718) 762-1324
troylaw@troypllc.com